UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SALLY STAFFORD<br><br>      Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>  Acting Commissioner of Social Security,<br><br>      Defendant. | Case No. 4:20-cv-1011-NKL |

## ORDER

Sally Stafford appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Doc. 1 (Social Security Complaint); Doc. 13 (Stafford's Social Security Brief). Stafford argues her case should be remanded because the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence. For the reason stated below, the decision of the ALJ is remanded for further development of the record.

I. **BACKGROUND**

    A. **Medical History**

In July of 2017, Stafford's general care provider, Dr. Dangelo, diagnosed Stafford with chronic fatigue and sleep apnea. Tr. 367. Dr. Dangelo met with Stafford four times from July 14, 2017, to April 4, 2018, where he noted that she had a normal mood and affect and a history of moderate depression. Tr. 357-58, 361, 364, 366, 372-73, and 449-450.

On January 25, 2018, psychiatrist Susan Barngrover examined Stafford. Tr. 424-25. She determined the following: Stafford denied having suicidal or homicidal ideations, hallucinations,

or delusions; she appeared well groomed; she was cooperative; her mood was anxious; her speech was pressured; and her thought process, memory, and cognitive function were intact. *Id.* From January of 2018 until February of 2020, Dr. Barngrover regularly evaluated Stafford. With limited exceptions, those evaluations stated Stafford's energy was poor, her cognition was impaired, her memory was within normal limits, her abstract ability into insight and judgment were intact, her speech was sometimes challenged, and her mood varied. Tr. 416-448, 666-696.

Dr. Barngrover recommended Stafford to another psychiatrist, Dr. Sternberg. Tr. 725. Dr. Sternberg found that Stafford's concentration and motivation began to worsen in 2017 and that in 2018 she began to struggle at work. Dr. Sternberg determined Stafford was unable to work due to her impaired memory, concentration, and energy. Tr. 726.

### B. Work History

Stafford worked as a "cost utilization specialist" for the Government Employment Health Association from June of 1996 until August of 2018. Tr. 214. She was fired in August of 2018. Tr. 50. Stafford states she was put on a performance improvement plan because of something she said to an outside vendor and was then fired for "something I said in one of the meetings they didn't like." Tr. 51.

### C. The ALJ's Decision

The ALJ determined that Stafford had not engaged in substantial gainful activity since August 13, 2018—the alleged onset date of her disability. Tr. 13-14. The ALJ then determined that Stafford had the following severe impairments: posttraumatic stress disorder (PTSD), depressive disorder, and attention deficit disorder. Tr. 14. The ALJ determined Stafford had the following not severe impairments: hypothyroidism, sleep apnea, chronic fatigue, obesity, slight degenerative changes of the left knee, and gastroesophageal reflux disease. *Id.*

At step three, the ALJ determined that Stafford did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 14-15.

The ALJ determined that Stafford had the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out simple and routine tasks that might entail detailed, but uninvolved instructions. She can sustain persistence and pace for unskilled work tasks in a nonproduction-paced work setting. She can occasionally interact with co-workers and supervisors but cannot interact with the public in the performance of job duties. She can adapt to normal changes in an unskilled work setting. Tr. 15

To formulate the RFC, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* The ALJ determined that the "medical evidence of record does not fully support the claimant's allegations." Tr. 16. As a result of Stafford's RFC, the ALJ determined Stafford was unable to perform her past relevant work. Tr. 17-18. However, the Vocational Expert ("VE") testified that someone with Stafford's age, education, work experience, and RFC could be a stable attendant, irrigator, floor waxer, or linen room attendant. Tr. 18-19. The ALJ observed that this testimony was "consistent with the information contained in the Dictionary of Occupational Titles, the Selected Characteristics of Occupations"; and based on this testimony the ALJ concluded that Stafford was not disabled because she could perform jobs that existed in the national economy. Tr. 19. Stafford appeals this determination.

## II. LEGAL STANDARD

"The Court must affirm the Commissioner's denial of social security benefits so long as 'there was no legal error' and 'the findings of fact are supported by substantial evidence on the record as a whole.'" *Alhilfy v. Saul*, No. 4:20-CV-00235-NKL, 2021 WL 462122, at *2 (W.D.

Mo. Feb. 9, 2021) (quoting *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016)). "'Substantial evidence' is less than a preponderance of evidence but enough that a reasonable mind could find the evidence adequate to support the ALJ's conclusion." *Id.* (citing *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015)). The Court must consider evidence that both supports and detracts from the ALJ's decision and should "defer heavily to the findings and conclusions of the Social Security Administration." *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citing *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)).

### III. DISCUSSION

#### A. Whether the RFC Is Supported by Substantial Evidence

Stafford argues that the ALJ's RFC is not supported by substantial evidence because the ALJ (1) failed to incorporate limitations into the RFC from Dr. Bucklew's opinion without explanation; (2) improperly discredited Stafford's subjective complaints and the opinions of Stafford's treating psychiatrists; and (3) refused to include a prior consultative examination in her file.

##### 1. Whether the ALJ Committed Reversible Error when, Without Explanation, She Did Not Adopt Restrictions from Dr. Bucklew's Opinion

Stafford argues that the ALJ violated SSR 96-8p because the RFC deviated from Dr. Bucklew's opinion without explanation. Dr Bucklew is the state agency medical consultant who reviewed Stafford's file to make the initial disability determination.

SSR 96-8p states an ALJ's RFC assessment "must always consider and address medical source opinions." *See* SSR 96-8p, 1996 WL 374184, at *7. If the RFC conflicts with an opinion from a medical source, then the adjudicator must explain why the opinion was not adopted. *Id.* If the RFC deviated from a medical opinion without explanation, then the ALJ has committed

reversible error. *See, e.g.*, *Holdeman, v. Kijakazi*, No. 20-CV-729-NKL, 2021 WL 6062368, at *8 (W.D. Mo. Dec. 22, 2021); *see also McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) (remanding for clarification when the ALJ failed to explain why the RFC deviated from a medical opinion); *Alhilfy v. Saul*, No. 4:20-CV-00235-NKL, 2021 WL 462122, at *4 (W.D. Mo. Feb. 9, 2021) (remanding case when the ALJ gave a medical opinion some weight but did not adopt its limitation without explanation).

Dr. Bucklew opined that Stafford was moderately limited in her ability to carry out detailed instructions or "respond appropriately to changes in the work setting." Tr. 128-129. The ALJ found Dr. Bucklew's findings, "generally persuasive" because his findings were the most recent and generally consistent with the overall medical evidence. Tr. 17

Even though the ALJ found Dr. Bucklew's opinion generally persuasive, the RFC deviated from Dr. Bucklew's opinion in multiple ways. First, the RFC stated Stafford could "carry out simple and routine tasks that might entail detailed, but uninvolved instructions," even though Dr. Bucklew stated Stafford had difficulty with following instructions and was moderately limited in her ability to follow detailed instructions. Tr. 15. Second, the RFC did not account for Dr. Bucklew's opinion that Stafford was moderately limited in her ability to respond appropriately to changes in the work setting because the RFC stated Stafford "can adapt to normal changes in an unskilled work setting." Tr. 15.

Third, Dr. Bucklew's opinion stated that Stafford was moderately limited in her ability to interact appropriately with the general public and in her ability to get along with co-workers without distracting them or exhibiting behavioral extremes. Tr. 129. However, in the RFC the ALJ precluded Stafford from interacting with the public while allowing her to occasionally interact with coworkers. Tr. 15.

The ALJ has committed reversible error because she violated SSR 96-8p by both deviating from a medical opinion without explanation and failing to explain material inconsistencies in the record. *McCadney*, 519 F.3d at 767; *Holdeman*, 2021 WL 6062368, at *8; *Alhilfy*, 2021 WL 462122, at *4.

The Commissioner argues that the ALJ was allowed to deviate from a medical source opinion without explanation because of changes in the social security regulations. *See* 20 C.F.R. § 404.1520c. The Commissioner argues that the new regulations allow the ALJ to deviate from Dr. Bucklew's opinion without an explanation because those regulations state the ALJ will not give any medical opinion controlling weight. However, the fact that no opinion will get controlling weight does not change the fact that under SSR 96-8p, the ALJ was required to explain why the RFC deviated from a medical opinion.

The Commissioner also argues the ALJ was not required to explain why she did not adopt the restrictions in Dr. Bucklew's opinions because 20 C.F.R. § 404.1520c states the ALJ was "not required to articulate how [she] considered each medical opinion or prior administrative finding from one medical source individually." The regulation states that if one medical source "provides multiple medical opinion(s) or prior administrative medical finding(s)," then the ALJ can "articulate how [she] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis." 20 C.F.R. § 404.1520c(b)(1). The fact that the ALJ was allowed to analyze Dr. Bucklew's opinions collectively does not allow the ALJ to violate SSR 96-8p's command to explain any conflict between the RFC and medical opinions. It simply allows the ALJ to address all the conflicts in a single analysis.

Additionally, the Commissioner cites to *Masciovecchio v. Berryhill*, 4:16-CV-01048-DGK, 2017 WL 3741011, at *4 (W.D. Mo. Aug. 30, 2017) and *Martsolf v. Colvin*, No. 6:16-00348-

NKL, 2017 WL 77424, at *7 (W.D. Mo. Jan. 9, 2017). However, both cases only support the contention that an RFC can be formed without relying upon a medical opinion. They do not stand for the proposition that an ALJ can disregard SSR 96-8p and create an RFC that deviates from a medical opinion without explanation.

The Commissioner argues that because the ALJ found Dr. Bucklew's opinion "generally persuasive," she signaled that she was not persuaded by all the limitations Dr. Bucklew suggested, and the ALJ only incorporated into the RFC those limitations that she found to be supported by the record. However, the ALJ provided no explanation as to why she adopted some of the limitations from Dr. Bucklew's opinion but not others. The Court will not rely upon the Commissioner's post hoc justification that the ALJ only adopted limitations that were consistent with the record. *E.g.*, *May v. Astrue*, No. 09-CV-03480-NKL, 2010 WL 3257848, at *9 (W.D. Mo. Aug. 16, 2010) ("The Commissioner's post hoc analysis of the medical records in this case is insufficient when none of these reasons were provided in the ALJ's opinion.").

Lastly, the Commissioner argues the failure to include the above limitations into the RFC was harmless because Dr. Bucklew's assessment recognized these limitations and yet still found that Stafford was not disabled. However, the fact that Dr. Bucklew did not find that Stafford was disabled does not mean that if the RFC added all of limitations from Dr. Bucklew's opinion the ALJ or VE would necessarily agree with Dr. Bucklew's conclusion. Furthermore, because the ALJ's hypotheticals to the VE did not include the additional mental limitations from Dr. Bucklew's opinion, it is not clear that Stafford could perform the jobs the VE identified. *Alhilfy v. Saul, No. 4:20-CV-00235-NKL*, 2021 WL 462122, at *3 (W.D. Mo. Feb. 9, 2021) (holding the Court could not determine if the claimant could perform the unskilled jobs the VE proposed because the ALJ

had not incorporated limitations on following instructions or interacting with others into the hypotheticals presented to the ALJ). Remand therefore is required.

> **2. Whether the ALJ's Decision to Discredit Stafford's Subjective Complaints and the Opinions of Her Treating Psychiatrists Was Supported by Substantial Evidence**

Stafford argues that the RFC was unsupported because the ALJ's decision to discredit Stafford's subjective complaints and the opinions of her treating psychiatrist was not supported by substantial evidence. In the ALJ's decision she summarized Stafford's subjective complaints regarding the intensity of her symptoms as follows:

> The claimant testified that she cannot work because of memory problems, as she forgets what she is talking about and has short-term memory loss. She said she cannot remember anything and has difficulty concentrating. The claimant stated that she has had fatigue for many years and falls asleep sitting in a chair. She has had no change in medications, still taking Adderall, Zoloft, Xanax and Topamax. She has no side effects from these medications. The claimant testified that she does not have friends. She sees therapists every five weeks. The claimant said she needs to write things down and have an alarm. She sleeps and rests to be able to do anything. Tr. 16.

The record contains medical opinions from Stafford's two treating psychiatrist, Dr. Barngrover and Dr. Sternberg. Dr. Barngrover stated Stafford was markedly limited in her ability to respond appropriately to work pressures in a usual work setting because she becomes easily frustrated, agitated, and anxious, with mood changes that are often abrupt and overexaggerated. Tr. 698.

Dr. Sternberg opined that Stafford's symptoms worsened in 2017, Stafford began to have problems at work in 2018, since 2018 Stafford's depression has been marked and unresponsive to a variety of medication, Stafford has been chronically tired and unmotivated, and Stafford has displayed impaired concentration and memory. Tr. 725-26. Dr. Sternberg continued, "needless to say, these impairments interfered with her ability to look for another job. It is my medical opinion that her current level of functioning reveals incapacitant impairment because of her

chronic depression unresponsive to medication trials, as well as, her anxiety disorder which has been markedly worsened by losing her job and the PTSD feelings this has engendered." Tr. 726.

The ALJ discredited both opinions and Stafford's subjective allegations because they were inconsistent with the record. Tr. 16-17. In particular, she found that the opinions and Stafford's subjective allegations were inconsistent with Dr. Bucklew's opinion, the treatment notes from Stafford's primary care doctor, Stafford's conservative course of treatment, and her activities of daily living. The ALJ also cited to the treatment records from Dr. Barngrover and the fact that Stafford worked after the onset of her symptoms.

### a. Dr. Bucklew's Opinion

Dr. Bucklew opined the following: Stafford does not have memory limitations, Stafford is not significantly limited in her ability to complete a normal workday or workweek without interruptions from psychologically based symptoms, Stafford's statements about the intensity of her symptoms is not supported by the objective medical evidence, and Stafford is not disabled.

Dr. Bucklew's determination that Stafford is not disabled contradicts Dr. Sternberg's opinion that Stafford is incapable of working. Additionally, Dr. Bucklew's determination that Stafford is not significantly limited in her ability to complete a normal workday contradicts Dr. Barngrover's determination that Stafford is markedly limited in her ability to respond appropriately to work pressures in a usual work setting.

When two medical opinions contradict, the ALJ is entitled to resolve the contradiction by discrediting the opinions she finds less persuasive. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("An ALJ may 'discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence.'" (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000))). This Court cannot disturb the ALJ's

decision if it is supported by substantial evidence. *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015) ("'We do not reweigh the evidence presented to the ALJ,' and we defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." (quoting *Gonzales v. Barnhart,* 465 F.3d 890, 894 (8th Cir.2006))).

Stafford argues that because Dr. Bucklew has not treated Stafford, his opinion cannot be used to discredit those of her treating psychiatrists. While a treating relationship is relevant to determine the persuasiveness of an opinion, 20 C.F.R. § 404.1520c(b)(2) makes clear that the opinion's supportability, and consistency, are the most important factors to be taken into consideration.[1]

Stafford argues Dr. Bucklew's opinion is insufficiently supported because Dr. Bucklew only reviewed three records and did not review all of Dr. Barngrover's records or the medical opinions of Dr. Barngrover and Dr Sternberg. However, Dr. Bucklew reviewed four records as well as notes from three other evaluations. Tr. 123-24. He also reviewed Stafford's functional report and work history. Tr. 123-25. Additionally, substantial evidence supports the ALJ's determination that Dr. Bucklew's opinion was better supported because neither of the treating psychiatrists' opinions state what, if any, records the doctors reviewed before issuing their opinions. Tr. 697-98, 725-26.

---

[1] Supportability is defined as "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(c)(1). Consistency is defined as "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(3).

Moreover, the Court sees no error in the ALJ's determination that Dr. Bucklew's opinion was more consistent with the record than the treating psychiatrists. As shown below, substantial evidence in the record supports Dr. Bucklew's conclusion that Stafford was not disabled. *See infra* Sections III.A.2.b-III.A.2.e.

### b. Primary Care Physician

The ALJ discredited Stafford's subjective complaints because, "[t]he record shows the claimant reported to her primary care physician, [Dr. Dangelo], that she had a moderate level of depression. She had normal mood and affect on examinations." Tr. 16; *see also* Tr. 357, 361, 364, 366, 372-73, 449-450, 456, 458. Additionally, the ALJ discredited the treating psychiatrists' opinions because of "the claimant's treatment notes suggesting a moderate level of symptoms." Tr. 17.

Stafford argues that the ALJ could not rely on these evaluations because they predated her alleged disability onset date. Dr. Dangelo evaluated Stafford between July 14, 2017, and April 4, 2018. He determined that Stafford had a history of moderate depression on April 4, 2018. Stafford's alleged disability onset date was August 13, 2018. Tr. 11.

The Eighth Circuit has held that a medical opinion should not be discredited merely because it was rendered before the disability onset date as long as there is no evidence of intervening trauma or evidence that the symptoms had since deteriorated. *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005). Stafford has cited no evidence that her condition has deteriorated such that these records should not have been considered here. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (noting that a "disability claimant has the burden to establish her RFC"). Consequently, the ALJ was allowed to consider the records even though the examinations occurred before the alleged disability onset date.

Stafford also argues that the evaluations should not be considered because Dr. Dangelo is not a psychiatrist, nor was he treating Stafford due to her mental health problems. A doctor's specialization is relevant to how persuasive their opinion is. 20 C.F.R. § 404.1520c(c)(4). However, the social security regulations do not state that an opinion cannot be considered or is irrelevant because it comes from a non-specialist. As a result, the fact that Dr. Dangelo was a primary care physician does not make the ALJ's decision to rely upon his examination erroneous.

Furthermore, Dr. Dangelo's observation that Stafford's mood and affect were normal, and her depression was mild, supports the ALJ's decision to discredit Stafford's subjective allegations and the treating psychiatrists' opinions because they indicate her depression was not disabling and that Stafford's mood would not markedly limit her ability to handle the normal pressures of work. *Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 975 (8th Cir. 2009) (upholding the decision to discredit a treating physicians' opinion because in part it was contradicted by the treatment notes of other doctors); *Karleskint v. Colvin*, No. 12-03281-CV-S-DGK, 2013 WL 2241948, at *5 (W.D. Mo. May 21, 2013) ("An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, including[] the objective medical evidence.").

### c. Daily Activities

Stafford argues that the ALJ incorrectly relied upon her daily activities. When evaluating the intensity and persistence of a claimant's symptoms an ALJ must consider the claimant's daily activities. 20 C.F.R. § 404.1529(a). Additionally, an ALJ may discredit a medical opinion when it conflicts with a claimant's daily activities. *Turpin v. Colvin*, 750 F.3d 989, 994 (8th Cir. 2014) (ALJ properly discounted opinion where it conflicted with the medical records, the testimony of a medical expert, and plaintiff's account of her daily activities).

The record shows Stafford lives alone in a duplex, takes care of her own finances, prepares her own meals, cleans her house, bathes herself, dresses herself, does her own laundry, drives herself to the grocery store, takes care of a pet, socializes one to two times a month, goes bird watching, and travels by plane to see her family in California. Tr. 53-58, 311-15.

Stafford argues that the daily activities do not show she can work because mental illness creates irregular symptoms and symptom-free periods. However, Stafford has not alleged, or pointed to evidence that shows, that her mental impairments wax and wane or that she experiences symptom free periods.[2] Tr. 52 (claimant testifying she is disabled because of her memory loss and her fatigue but not claiming these symptoms are volatile or come and go); Tr. 322 (Stafford's functional report showing the same). Rather, the record shows that Stafford regularly independently performs the tasks needed to care for herself and her pet.

Furthermore, the cases cited by Stafford are distinguishable. In *Freeman v. Colvin*, 4:15-CV-968, 2016 WL 4620706 (W.D. Mo. Sept. 6, 2016), Freeman's ability to water his grass, take care of his personal needs, and make a sandwich did not prove he was not disabled because "Freeman was continually monitored by a psychiatrist and a therapist, received significant community support services at the rehabilitative level . . . and lived with a relative." *Id.* at *5. In *Burress v. Apfel*, 141 F.3d 875, 881 (8th Cir. 1998), the claimant's ability to perform various household tasks, care for her pets, socialize with others and watch television was not evidence that Burress was disabled because Burress could only do these things occasionally. *Id.* at 891. Lastly,

---

[2] In the cases cited by Stafford, the ALJ found that the claimant's mental illness was volatile. *See Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996) ("The record also shows that the work occurred in a period of remission—occurring as it did between Andler's two periods of hospitalization"); *Becker v. Colvin*, 972 F. Supp. 2d 1084, 1102 ("[T]he ALJ ignored medical evidence that plaintiff's mental impairments varied in severity over time."). Those cases are not applicable here.

in *Kelley v. Callahan*, the Court only found that Kelly's daily activities did not show she was disabled because Kelley could not take care of herself independently. 133 F.3d 583, 588 (8th Cir. 1998).

### d. Dr. Barngrover

The ALJ found that Dr. Barngrover's records contradicted Stafford's subjective allegations because they "indicate mostly normal mental status examinations with no psychotic symptoms, suicidal or homicidal ideation, and intact abstract abilities, insight and judgment, except for poor energy, occasional delayed speech, dysthymic or nervous affect, and some impaired concentration." Tr. 16. The records also show that Stafford was noted to have normal memory and that in late 2019 her mental status examinations were improved. *Id.*

Stafford argues the records do not support the ALJ's decision to discredit Stafford's subjective allegations because the ALJ wrongly stated that Dr. Barngrover's examinations showed "normal" results when in fact the examinations showed that Stafford exhibited a concentration impairment at nearly every visit, her short term memory was periodically impaired, and her psychomotor and speech activity were periodically slowed. However, except for memory loss, the ALJ's description of the records largely mirrors Stafford's. Tr. 16.

Furthermore, while Stafford argues the records show that her short term memory was "periodically impaired", the record shows that in only 4 of the 18 evaluations was her memory noted to be impaired. Tr. 422, 446,[3] 447, 671. In the other 14 evaluations, Stafford's memory was noted to be within normal limits. Tr. 418-422, 425, 448, 669, 672-73, 678-79.

---

[3] The evaluations at Tr. 422 and Tr. 446 are unclear because Dr. Barngrover says Stafford's memory is within normal limits but also is impaired in the immediate short term. For the purpose of this appeal, the Court construes the records as indicating that her short term memory was impaired.

Stafford argues that the normal findings do not contradict Stafford's subjective allegations because the symptoms of mental illness wax and wane over time. An ALJ may not pick and choose helpful evidence when analyzing mental illness but rather must consider the longitudinal evidence of a claimant's symptoms. *Mahaffey v. Saul*, No. 19-CV-3433-S-WBG, 2021 WL 674015, at *5 (W.D. Mo. Feb. 22, 2021). However, the ALJ looked at all the evaluations from a two-year period, and they showed that over that period Stafford's memory was very rarely impaired. This is substantial evidence that supports the ALJ's determination that Stafford's memory loss was not disabling. *See Gregory v. Kijakazi*, No. 4:20-CV-00860-SRC, 2021 WL 4243174, at *5 (E.D. Mo. Sept. 17, 2021) ("That Gregory appeared 'extremely depressed' and tearful on the single date of her consultation with Dr. Leonberger does not obviate the consistent findings by her treating physician, Dr. Thekkemuriyil, that her depression was improved with medication and the fact that near the end of the relevant period her depression was 'much better.'").

Lastly, to the extent Stafford's memory problems did exist, the ALJ correctly pointed out that they improved over time as no impairment was noted during the last five months of evaluations. Tr. 672-73, 678-79; *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling." (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004))); SSR 16-3p (ALJs may consider the claimant's treatment success). Stafford correctly argues that just because her memory improved does not necessarily mean it is not still disabling. *Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir. 2003). However, the records show her memory is not disabling because it is now "within normal limits." *See e.g.* Tr. 679.

### e. Additional Uncontroverted Evidence that Supports the ALJ's Decision

When discrediting Stafford's subjective complaints, the ALJ also cited the fact that Stafford worked after the onset of her symptoms. Tr. 16. The record shows Stafford worked for her previous employer from June of 1996 until August 13, 2018. Tr. 214. As stated above, Stafford testified that she has been incredibly fatigued for many years. Tr. 52. Furthermore, Dr. Barngrover's records show that Stafford had impaired concentration from March 3, 2018, until Stafford's disability onset date. Tr. 418-21, 422, 446, 447-48. However, she was able to keep her job during the years in which she was fatigued and for at least five months after her concentration issues began. Stafford's ability to work despite the onset of her fatigue and concentration impairment supports the ALJ's conclusion that the symptoms are not disabling. *Schultz v. Astrue*, 479 F.3d 979, 982-83 (8th Cir. 2007) (citing *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir.2005)) ("working after the onset of an impairment is evidence of an ability to work.").

### 3. Prior Consultative Examination

Stafford argues that the ALJ failed to fulfill her duty to fully and fairly develop the record because she failed to include in the record a prior consultative examination report that was included in a previously denied application. On January 22, 2020, Stafford's counsel asked the ALJ to reopen a previous claim and to include a prior consultative examination report from a previous claim in the current application. Tr. 333. The ALJ's decision did not address the prior consultative examination, nor did it state whether the ALJ was going to reopen the prior claim.

The Commissioner argues that the Court does not have jurisdiction to review an ALJ's determination not to reopen a case because a refusal to reopen is not a final decision of the Commissioner made after a hearing. *See* 42 U.S.C. § 405(g). However, here, the ALJ did not refuse to reopen the case. Rather, the ALJ made no decision at all. Consequently, 42 U.S.C. §

405(g) does not bar this Court's review. *Bradford v. Barnhart*, No. 4:01CV3267, 2003 WL 1811534, at *11 (D. Neb. Apr. 7, 2003) ("While the defendant is correct that judicial review of a decision by the Commissioner not to reopen a prior claim is not generally available, in this case there has been no decision, implied or otherwise, that the plaintiff's previous applications cannot be reopened. The reopening issue was simply not addressed.").

"The administrative hearing is not an adversarial proceeding. . . . [and] [t]he ALJ has a duty to develop facts fully and fairly." *Cox v. Apfel*, 160 F.3d 1203, 1209 (8th Cir. 1998) (citations omitted). However, an ALJ's decision should not be remanded for failure to fully develop the record unless the claimant "was prejudiced or treated unfairly." *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (citing *Phelan v. Bowen*, 846 F.2d 478, 481 (8th Cir. 1988)); *see also Owens v. Saul,* No. 19-00402-CV-NKL, 2020 WL 2319880, at *5 (W.D. Mo. May 11, 2020) ("[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.").

Here Stafford has failed to show in either of her briefs how she was prejudiced by the exclusion of the prior examination. In the absence of a showing of prejudice the Court will not reverse on this ground.

Stafford highlights that the district court in *Bradford v. Barnhart,* No. 4:01CV3267*,* 2003 WL 1811534, at *10 (D. Neb. Apr. 7, 2003), remanded the case when the ALJ failed to include evidence from a previously denied claim. However, the court in *Bradford* only remanded the case after determining the failure to include the evidence prejudiced Bradford. *Id.* at **10-11.

### B. Whether there Was Manifest Injustice

Stafford also asks this Court to review the ALJ's decision for "manifest injustice," citing *Terry v. Barnhart*, 82 F. App'x 499, 500 (8th Cir. 2003). However, "manifest injustice" in *Terry*

refers to the ability of the Eighth Circuit to address issues not addressed by a district court. The doctrine is not applicable to this Court's review.

### C. Whether Benefits Must Be Awarded on Remand

Stafford argues that, on remand, the ALJ should be ordered to grant Stafford benefits. A Court should remand with an instruction to grant benefits when the record "overwhelmingly supports" a finding of disability. *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009). This is the case when "further hearings would merely delay the receipt of benefits." *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir.1984). Stafford has not met this burden.

Although the ALJ erred in failing to explain why she did not fully adopt the limitations from Dr. Bucklew's opinion, the Court cannot find on the record presented that, there is "overwhelming evidence" that if the limitations had been adopted, Stafford would have been deemed disabled. As such, remand for an award of benefits is not appropriate.

### IV. CONCLUSION

For the reasons discussed above, the ALJ's decision is REMANDED. On remand, the ALJ must either adopt the limitations from Dr. Bucklew's opinion or explain why they are not being adopted.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: February 7, 2022
Jefferson City, Missouri